**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| U.S. SECURITY ASSOCIATES, INC., & UNIVERSAL PROTECTION SERVICES, LLC, dba ALLIED UNIVERSAL SECURITY SERVICES,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN PARRETTI, AURY MALDONADO, & CENTRAL PUBLIC SAFETY, LLC,<br><br>Defendants. | CIVIL ACTION<br><br>NO. 4:19-40100-TSH |

**ORDER AND MEMORANDUM ON DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION AGAINST ENFORCEMENT OF RESTRICTIVE COVENANTS (Docket No. 13)**

**September 26, 2019**

**HILLMAN, D.J.**

U.S. Security Associates, Inc. ("USSA") and Universal Protection Services, LLC ("Allied") (collectively, "Plaintiffs") filed an action against John Parretti ("Defendant"), Aury Maldonado, and Central Public Safety, LLC ("CPS") for, *inter alia*, breach of contract, trade secret appropriation, unfair competition, and intentional interference with contractual and advantageous business relations. Defendant moves to enjoin Plaintiffs from enforcing a non-competition covenant Defendant signed with USSA while the parties litigate Plaintiffs' claims. (Docket No. 13). Because Defendant has not shown likelihood of success on the merits, the Court ***denies*** his motion for a preliminary injunction without prejudice.

1

**Background**

On June 13, 1994, USSA hired Defendant as a Branch Manager in its Somerville office. (Docket Nos. 1 at 10, 11 at 3). In this capacity, Defendant serviced accounts in and around Boston. (Docket Nos. 1 at 10–11, 11 at 3). He also serviced certain other accounts that fell within other branches, including the Worcester office. (Docket Nos. 1 at 11, 11 at 3).

During his tenure at USSA, Defendant signed two employment agreements. (Docket Nos. 1 at 11–12, 11 at 3). The first, dated April 19, 2012, restricted Defendant from soliciting co-employees and/or current or prospective clients for two years after termination (the "2012 Agreement"). (Docket No. 1-1 at 4–5). It also provided that, "[s]hould the Employer at any time be merged into or consolidated with another corporation . . . the provisions of this contract shall be binding upon and inure to the benefit of the corporation resulting from such merger or consolidation or to which substantially all of the assets of the Employer shall be transferred." (Docket No. 1-1 at 3). The second, an employment agreement dated April 23, 2014, modified the non-solicitation covenant of the 2012 Agreement by reducing the restriction from two years to eighteen months (the "2014 Agreement"). (Docket Nos. 1-2 at 2–4, 13 at 2). It also prohibited Defendant from "perform[ing] job activities of the type [he] conducted or provided for Employer within the two years prior to [his] termination" for eighteen months after his termination. (Docket No. 1-2 at 3).

In August 2018, USSA announced a planned acquisition by Allied. (Docket No. 1 at 2). In October 2018, Allied purchased all USSA's stock, and USSA became a wholly owned subsidiary pending merger of the companies in 2019. (Docket Nos. 1 at 4, 11 at 2). USSA informed its employees that their status at the merged company would be confirmed no later than mid-November. (Docket No. 20-1 at 9–10). The Chief Human Resources Officer later emailed

Defendant Parretti to identify him as a "Key Associate" in the merger. (Docket No. 20-1 at 14). To incentivize Defendant to remain with the company, the Chief Human Resources Officer conveyed an offer to pay Defendant $23,522.58 if he stayed and his role ended up being eliminated. (Docket No. 20-1 at 14). Defendant resigned on October 25, 2018, citing the "elimination of my job title and the fact that I have not received an employment offer from Allied." (Docket No. 20-1 at 16).

Before he left, Defendant forwarded several emails allegedly containing confidential information to his personal email address. (Docket No. 20-1). Plaintiffs subsequently learned that Defendant's wife owned a 50% share in CPS, one of their competitors. (Docket No. 1 at 19). Plaintiffs lost at least four customers to CPS in the wake of Defendant's resignation. (Docket No. 1 at 20).

On July 26, 2019, Plaintiffs filed this action to, among other things, enforce the non-competition covenant in the 2014 Agreement. (Docket No. 1). Defendant moved for a preliminary injunction on September 9, 2019. (Docket No. 19).

## Legal Standard

When considering a motion for a preliminary injunction, this Court weighs four factors: "(1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the [non-moving party] less than denying an injunction would burden the [moving party]; and (4) the effect, if any, on the public interest." *Jean v. Massachusetts State Police*, 492 F.3d 24, 26-27 (1st Cir. 2007) (citation omitted). Likelihood of success on the merits is "the most important part of the preliminary injunction assessment." *Id.* at 27. If a movant cannot show that he is likely to

succeed on the merits, "the remaining factors become matters of idle curiosity." *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002).

## Discussion

Defendant can only succeed in his motion for a preliminary injunction if he can prove the unenforceability of the non-competition covenant. Under Massachusetts law, a non-competition covenant is enforceable if it is "necessary to protect a legitimate business interest, reasonably limited in time and space, and consonant with the public interest." *Boulanger v. Dunkin' Donuts Inc.*, 442 Mass. 635, 639 (2004). Because Defendant has not shown that Plaintiffs lack a legitimate business interest in enforcing the non-competition covenant or that the covenant is unreasonably limited in time and space, Defendant has not proven likelihood of success on the merits. The Court therefore ***denies*** his motion for a preliminary injunction without addressing the other factors. *See New Comm*, 287 F.3d at 9.

### 1. Legitimate Business Interest

Defendant argues that Plaintiffs cannot enforce the non-competition covenant because neither USSA nor Allied has a legitimate business interest to protect. According to Defendant, USSA lost its business interests when it merged with Allied and ceased independent operations, and Allied has no business interest because it was never Defendant's employer. (Docket No. 13 at 4). Defendant misinterprets Massachusetts law. Although the merger may have ended the "separate existence" of USSA "it did not end all obligations owed" to USSA. *See Intertek Testing Servs. NA, Inc. v. Curtis-Strauss LLC*, No. 98903F, 2000 WL 1473126, at *4 (Mass. Super. Aug. 8, 2000). Instead, "all of [USSA's] property, rights, and privileges automatically became vested in the merged company." *Id.*; *see also* M.G.L. c. 156B § 80. Thus, the property,

right, and privilege to enforce the post-employment obligations in Defendant's contract vested in Allied, the surviving corporation. *See Braga v. Genlyte Grp., Inc.*, 420 F.3d 35, 40 (1st Cir. 2005) (noting that "a corporation's employment contracts are counted among its assets").

Defendant suggests that the right to enforce the non-competition covenant could not have vested in Allied because he never worked for Allied. The Court finds this unpersuasive. Defendant has not cited any case indicating that the ability to enforce post-employment contract obligations hinges on whether an employee worked for the surviving corporation.[1] And any such holding would be inconsistent with the governing statute, which provides, without exception,[2] that "*all of* the estate, property, rights, privileges, powers and franchises of the constituent corporations . . . shall be transferred to and vested in the resulting or surviving corporation, without further act or deed." M.G.L. c. 156B § 80(a)(5). As Allied is the legal successor in interest to USSA, "all of" USSA's property, rights, and privileges have vested in it. Allied thus may enforce the post-employment obligations of the employment contract. *See Netscout Sys., Inc. v. Hohenstein*, No. 1784CV00373BLS2, 2017 WL 1654852, at *3 (Mass.

---

[1] Defendant references *Next Generation Vending v. Bruno*, No. 08-0365-G (May 20, 2008), *Getman & Cleary Schultz Ins., LLC v. USI Holdings Corp.*, No. 05-3286-BLS2, 2005 WL 2183159 (Mass. Super. Ct. Sept. 1, 2005), and *Securitas Sec. Servs. USA, Inc. v. Jenkins*, No. 032950BLS, 2003 WL 21781385 (Mass. Super. Ct. July 18, 2003). But none of these cases control. *Getman*, for example, involved a large insurance company that was trying to bar Getman from competing against *its* customer base rather than the customer base of its predecessor-in-interest. 2005 WL 2183159, at *2. Plaintiffs, however, seek to prevent Defendant from competing with the customer base inherited from USSA, not Allied's entire customer base. And *Securitas* involved an assignment of contractual rights in which the court "d[id] not truly know what happened, and when, with regard to the ongoing existence of Pinkerton's as a corporate entity." 2003 WL 21781385 at *2. But here the parties do not dispute that Plaintiffs merged into one company. And in any event, *Securitas* predates *Intertek* and *Netscout*, so to the extent it is inconsistent with either case, the Court follows the more recent decisions.

[2] Apart from certain limitations regarding the merger of cemetery corporations that are inapplicable to this case.

Super. Feb. 23, 2017) ("Hohenstein's contract with Danaher is an enforceable contract and NetScout is entitled to enforce Hohenstein's obligations under that Agreement as the legal successor in interest to the Danaher subsidiary that last employed Hohenstein.").

Defendant alternatively argues that the 2014 Agreement "does not permit USSA to assign its terms to Allied."[3] (Docket No. 13 at 4). But Massachusetts law provides that the property, rights, and privileges of the constituent corporations transfer to the surviving corporation in a merger "without further act or deed." M.G.L. c. 156B § 80(a)(5). Therefore, regardless of whether the 2014 Agreement provided for assignment, USSA's right to enforce the post-employment obligations in the 2014 Agreement automatically transferred to Allied upon completion of the merger.[4]

## 2.  *Reasonably Limited in Time and Scope*

Defendant also challenges the length and scope of the non-competition covenant. First, at a hearing before this Court, Defendant suggested that an 18-month restriction is inherently unreasonable. The Massachusetts Supreme Judicial Court, however, has upheld longer restrictions on time, *see, e.g.*, *Blackwell v. E. M. Helides, Jr., Inc.*, 368 Mass. 225, 229 (1975) (finding a three-year restriction "not unreasonable"), so an 18-month restriction cannot inherently be unreasonable. As Defendant has not offered any other evidence that 18 months is

---

[3]     Defendant contends that the 2014 Agreement is "the only relevant document." (Docket No. 13 at 4). For the purposes of this motion, the Court assumes without deciding that this argument is true because it does not impact the Court's resolution.

[4]     Defendant also implies that the 2014 Agreement is unenforceable for lack of consideration. (Docket No. 13 at 4 & n.2). Courts, however, have generally held that an employee's interest in continued employment provides sufficient consideration for an employment agreement. *See, e.g.*, *Am. Well Corp. v. Obourn*, No. CV 15-12265-LTS, 2015 WL 7737328, at *1 (D. Mass. Dec. 1, 2015).

unreasonable in these circumstances, the Court finds the non-competition covenant reasonably limited in time.

Second, Defendant argues that including Worcester in the scope of the non-competition covenant is unreasonable. According to Defendant, the restriction should only cover the Boston area because Defendant worked out of the Somerville office, which serviced Boston, and Allied does not have any office in Worcester. (Docket No. 13 at 6). "A geographic restriction is reasonable as long as it restricts a former employee from doing business in an area in which the company itself conducts business. *Marcam Corp. v. Orchard*, 885 F. Supp. 294, 299 (D. Mass. 1995) (citing *Kroeger v. Stop & Shop*, 13 Mass. App. Ct. 310, 315–16 (1982)). Allied succeeded to the interests of USSA, which had clients in Worcester. And Defendant serviced some of these Worcester accounts during his tenure at USSA. The Court thus finds the restriction against competing in Worcester reasonable.

### 3.  Public Interest

Finally, although Defendant did not address public interest considerations in his motion, the Court determines that the non-competition covenant does not inherently harm the public interest. *See Boulanger*, 442 Mass. at 646. While it restricts Defendant's "liberty of employment," it also ensures that Plaintiffs may carry out their business freely. *See id.*

### **Conclusion**

For the reasons stated above, Defendant's motion (Docket No. 38) is ***denied***, without prejudice to renew if discovery produces new information favorable to Defendant Parretti.[5]

---

[5]  I am mindful of the disparity in the size and resources between the parties and recommended that the parties submit their claims to mediation. However, since CPS did not want to participate, I did not order mediation. If that changes, the parties should contact my Courtroom Clerk, Martin Castles.

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN
DISTRICT JUDGE**